1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BARTON RAMSEY,

11            Plaintiff,                        No. 2:11-cv-3440 CKD

12        vs.

13   MICHAEL J. ASTRUE,                    ORDER
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying his application for Disability Income Benefits ("DIB") under

18   Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny

19   plaintiff's motion for summary judgment and grant Commissioner's cross-motion for summary

20   judgment.

21   BACKGROUND

22            Plaintiff, born January 30, 1955, applied on June 14, 2007 for DIB, alleging

23   disability beginning March 23, 1997.  Administrative Transcript ("AT") 120-121.  Plaintiff

24   alleged he was unable to work due to ruptured vocal cords, gastrointestinal problems, alcoholism,

25   old left knee injury, head and neck injury from March, 1997, and memory and coordination

26   problems.  AT 136.  In a decision dated July 28, 2010, ALJ Robert C. Tronvig, Jr., determined

                                           1

that plaintiff was not disabled.[1]  AT 13-23.  The ALJ made the following findings (citations to 20

C.F.R. omitted):

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 30, 2006, through his date last insured of December 31, 2008.[2]
>
> 3.  Through the date last insured, the claimant had the following severe impairments:  alcohol dependence and a depressive disorder.
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

[2]  Although the initial application listed an earlier date, in the disability report, plaintiff reported he stopped working on March 30, 2006.  AT 136

medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant is limited to simple, repetitive tasks that do not involve more than occasional interaction with the public.

6.    Through the date last insured, the claimant was unable to perform any past relevant work.

7.    The claimant was born on January 30, 1955 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured.

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills in not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from March 30, 2006, the alleged onset date, through December 31, 2008, the date last insured.

AT 15-22.

ISSUES PRESENTED

        Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ improperly assessed the severity of plaintiff's impairments; (2) the ALJ improperly discredited plaintiff's testimony; and (3) the ALJ improperly relied on the Medical-Vocational Guidelines in finding plaintiff is not disabled.

/////

3

1  LEGAL STANDARDS

2      The court reviews the Commissioner's decision to determine whether (1) it is

3  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

6  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

7  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

8  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

9  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

10  resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

11  omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

12  than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir.

14  1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may

16  not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.;

17  see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports

18  the administrative findings, or if there is conflicting evidence supporting a finding of either

19  disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d

20  1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was

21  applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22  ANALYSIS

23      A.  Severity of Impairments

24      Plaintiff contends the ALJ committed error at step two in the sequential analysis

25  by not identifying plaintiff's orthopedic and digestive impairments as "severe."  At step two of

26  the sequential evaluation, the ALJ determines whether the claimant has a medically "severe"

4

impairment or combination of impairments.  See 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).  An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months."  See 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909.  Basic work activities refer to "the abilities and aptitudes necessary to do most jobs."[3]  20 C.F.R. § 416.921(b).

Although centered around the term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  See Smolen, 80 F.3d at 1290.  The purpose is to identify "at an early stage those claimants whose medical impairment is so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account."  Bowen, 482 U.S. at 153.  "An impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

In this case, the ALJ found plaintiff has severe impairments at step two of the sequential analysis and proceeded through the sequential analysis to step five.  Plaintiff asserts

---

[3]  The applicable regulation provides examples of such "abilities and aptitudes":

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

1   that his medical conditions relating to his knee and ankle, back pain, and gastrointestinal

2   problems constitute additional severe impairments.[4]  Although the burden is on plaintiff at step

3   two of the sequential evaluation, see Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), counsel

4   for plaintiff has offered no meaningful argument in support of the claim that the ALJ erred at step

5   two.  A mere recitation of medical diagnoses does not demonstrate how each of the conditions

6   included in that recitation impacts plaintiff's ability to engage in basic work activities.  Put

7   another way, a medical diagnosis does not an impairment make.  Moreover, plaintiff's contention

8   that "back pain" should be considered a severe impairment ignores the governing regulations.

9   Pain is a symptom, not an impairment.  See 20 C.F.R. § 404.1529 ("[S]ymptoms . . . will not be

10  found to affect your ability to do basic work activities unless medical signs or laboratory findings

11  show that a medically determinable impairment(s) is present."); SSR 95-5p; see also Smolen 80

12  F.3d at1281; In re Heckler, 751 F.2d 954, 955 n.1 (8th Cir. 1984) ("pain is a symptom, not an

13  impairment").

14          In addition, the court notes that the medical record does not support plaintiff's

15  contention regarding additional severe impairments.  An examining physician performed a

16  comprehensive internal medicine evaluation on September 14, 2007 and assessed no functional

17  limitations attributable to plaintiff's orthopedic or gastrointestinal problems. AT 333-337.  The

18  findings of the examining physician are also supported by the medical record.  See, e.g. AT 18

19  (ALJ discussion of plaintiff's knee and back pain); AT 335 (full range of motion of left knee);

20  AT 359 (minimal degenerative change seen affecting medial and lateral compartments of knee);

21  361 (no decrease in range of motion of knee); AT 289 (low back pain after moving furniture);

22  AT 378 (plaintiff diagnosed with strain of lumbar region after getting Christmas present out of

23  his SUV); AT 266 (mild arthritis of lumbar spine seen on x-ray examination).  The state agency

24

25          [4]  In the heading for the section of plaintiff's brief in which the severity of impairments
    issue is discussed, plaintiff also references "anemia."  However, no argument is made with
26  respect to this condition.

physician similarly opined that plaintiff had no severe impairment due to plaintiff's knee or back condition. AT 412. Plaintiff's treating physician, Dr. Kuo, found plaintiff had no disabling medical condition. AT 303 (doctor informed plaintiff "I do not see the qualification for the disability"). Under these circumstances, the failure to characterize plaintiff's orthopedic and gastrointestinal conditions as severe impairments is not a basis for reversal of the ALJ's decision.

B. Credibility

Plaintiff further contends the ALJ improperly discredited his testimony. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

7

1  the ALJ in determining whether the alleged associated pain is not a significant nonexertional

2  impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may

3  rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458

4  (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172,

5  177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering,

6  the Commissioner's reasons for rejecting the claimant's testimony must be clear and

7  convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

8  1999).

9           Plaintiff testified that he could not work because of ankle and knee problems.  AT

10  41.  He also testified that he had ruptured his esophagus due to consuming alcohol and had as a

11  result suffered vocal cord damage during the surgery undertaken to repair the rupture.  AT 41.

12  With respect to lifting, plaintiff testified he could lift 10 pounds.  AT42.  Standing was limited

13  due to his ankle and knee problems.  AT 43.  Plaintiff also testified that he often fell asleep, a

14  couple of times a day, and that he did not want to be around people because he was depressed.

15  AT 57-58.

16           In finding that plaintiff could perform work at all exertional levels, the ALJ

17  rejected plaintiff's claims of disabling physical conditions and with respect to mental functional

18  residual functional capacity, limited plaintiff to simple, repetitive tasks that do not involve more

19  than occasional interaction with the public.  AT 17.  The ALJ, in assessing plaintiff's credibility,

20  noted that plaintiff himself had admitted to his treating physician that "even though I do not have

21  a disabling medical problem, my history of alcoholism and drug abuse should entitle me to

22  disability."  AT 18, 303.  The ALJ relied on the findings of the treating physician, to whom this

23  statement was made, that plaintiff had no significant objective findings and the physician's

24  assessment that plaintiff was doing well.  Id.  The ALJ also considered evidence of malingering

25  as demonstrated by plaintiff on psychological examination.  AT 18, 591 (plaintiff "produced an

26  invalid profile as he endorsed an extremely high number of items that have atypical content;"

8

1   included among reasons for this behavior was possible malingering).  Also factored into the

2   credibility analysis was the lack of objective evidence supporting plaintiff's claims, as discussed

3   above.  AT 266, 289, 303, 333-337, 359, 361, 378, 412.  The ALJ specifically noted that no

4   physician had referred plaintiff for further testing for the conditions plaintiff asserted were

5   disabling and that the only comprehensive evaluation of record indicated plaintiff had no

6   restrictions.  AT 21, 333-337.  The ALJ also considered general inconsistencies in the record,

7   such as plaintiff's claim that he was disabled due to vocal cord damage yet he was able to

8   communicate in a clear and effective manner at the hearing.  AT 21, 30-67 (plaintiff testified

9   from 9:32 a.m. to 10:18 a.m. without difficulty).  Plaintiff's activities of daily living, which

10  included grocery shopping, meal preparation, cleaning, mowing the lawn, and attendance at

11  church and AA meetings, were also properly considered by the ALJ as inconsistent with

12  plaintiff's claims of disability.  AT 21, 157-161.  The factors considered by the ALJ were all

13  valid and supported by the record.  The ALJ's credibility determination was based on permissible

14  grounds and will not be disturbed.

15      C.  Grids

16          Finally, plaintiff contends the ALJ should have taken the testimony of a

17  vocational expert instead of relying on the grids in finding plaintiff not disabled.  The Medical-

18  Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of

19  factors the ALJ must consider in determining whether other work is available.  See generally

20  Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring).  The factors include residual

21  functional capacity, age, education, and work experience.  For each combination, the grids direct

22  a finding of either "disabled" or "not disabled."

23          There are limits on using the grids, an administrative tool to resolve individual

24  claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

25  testimony of a vocational expert only when the grids accurately and completely describe the

26  claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see

9

1   also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ

2   may rely on the grids, however, even when a claimant has combined exertional and nonexertional

3   limitations, if nonexertional limitations are not so significant as to impact the claimant's

4   exertional capabilities.[5]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on

5   other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864

6   F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

7   (requiring significant limitation on exertional capabilities in order to depart from the grids).

8             Plaintiff contends vocational testimony was required because plaintiff has

9   nonexertional impairments.  The ALJ, however, specifically found that plaintiff had an ability to

10   perform work at all exertional levels.  AT 17 (Finding no. 5), AT 22.  The ALJ then went on to

11   find that although plaintiff's ability to work was compromised by nonexertional limitations,

12   those limitations had little or no effect on the occupational base of unskilled work at all

13   exertional levels.  AT 22.  The ALJ relied on Social Security Ruling 85-15 which notes that

14   unskilled jobs ordinarily involve dealing primarily with objects, not people.  AT 22.  See SSR

15   85-15; see also 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(i) (sedentary work), 202.00(g)

16   (light work).  That ruling also notes there are over 2,500 unskilled jobs that can be performed at

17   the medium, light and sedentary exertion levels and that there are additional unskilled jobs

18   available at the heavy exertion level.  SSR 85-15; see also 20 C.F.R. Pt. 404, Subpt. P, App. 2,

19   Rule 203.00(a) (medium work).  The regulations further provide that the ability to perform heavy

20   work includes the ability to perform work at the lesser functional levels as well.  See 20 C.F.R.

21

22         [5]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).

23         Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §

24   416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability

25   to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d

26   953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

Pt. 404, Subpt. P. App. 2, § 204.00.  The ALJ assessed plaintiff's residual functional capacity as being limited to simple, repetitive tasks that do not involve more than occasional interaction with the public.  AT 17.  These limitations are consistent with unskilled work.  See SSR 85-15 (basic mental demands of unskilled work include the abilities to understand, carry out, and remember simple instructions and respond appropriately to supervision and coworkers).  Under these circumstances, the ALJ properly relied on the grids which administratively notice a significant number of jobs available to plaintiff.

CONCLUSION

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (dkt. no. 14) is denied;

2.  The Commissioner's cross-motion for summary judgment (dkt. no. 18) is granted; and

3.  Judgment is entered for the Commissioner.

Dated: November 13, 2012

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4
ramsey3440.ss